LILJA v. STANDARD ACCIDENT INSURANCE CO.

1. INSURANCE—POLICY — CONTRACTS — CONSTRUCTION — ACCIDENT
INSURANCE.
   An accident insurance policy should receive, as to ambiguous
   or uncertain provisions, that construction which most favors
   the insured.

2. SAME—CHANGE OF EMPLOYMENT—APPLICATION.
   Where the insured gave an order for the payment of his first
   premium on an accident insurance policy to be paid by his
   employer out of wages earned during the month of July, but
   during June, prior to the issuing of a policy, insured changed
   employment, and was injured June 30th, dying on July 4th,
   a clause in the policy and in the order assigning wages, pro-
   viding that if any premium was not paid in pursuance of the
   arrangement so made, the insurance should cease, or if the
   insured should leave his employment before earning sufficient
   wages to pay the premium for the period therein specified,
   the policy should be void, precluded a recovery upon the
   policy.

Error to Gogebic; Cooper, J.   Submitted January 23,
1912.   (Docket No. 142.)   Decided July 22, 1912.

Assumpsit by Alfred Lilja against the Standard Acci-
dent Insurance Company of Detroit, upon a policy of in-
surance.   A judgment for defendant on a verdict directed
by the court is reviewed by plaintiff on writ of error.
Affirmed.

*O'Brien & Le Gendre* and *George O. Driscoll*, for
appellant.

*James A. O'Neill*, for appellee.

The defendant issued its policy, countersigned and dated
June 29, 1910, insuring Walfred Lilja for a period begin-
ning at 12 o'clock noon June 29, 1910, against loss of time

resulting from bodily injuries caused during the term of the insurance by external, violent, and accidental means, etc., and agreeing to pay the principal sum of $1,000 for loss of the life of the insured to plaintiff, father of the said Walfred Lilja. The application for the policy of insurance was made at Ironwood, Mich., and received at the office of the company in Detroit, Mich., June 3, 1910. The policy was mailed to the insured in the Detroit, Mich., post office, July 5, 1910, and was received at Ironwood July 7, 1910. When the insured applied for this policy, he was employed as a machinist's helper by the Chicago & Northwestern Railway Company at Ironwood, was 21 years of age, and was earning about $45 a month. Between the date of making his application and the date of the issuing of the policy, he left his position with the railway company and began to work as a fireman for the Oliver Iron Mining Company in the same city, firing the boiler of a stationary engine. While so employed, and on June 30, 1910, he was accidentally injured, and, as a result of his injuries, died July 4, 1910. It appears to be customary for the defendant to issue policies to workingmen and to take from them, instead of a present payment of the premium, an assignment of wages to be earned, and, in the instant case, the insured had delivered to the agent of the defendant an order or assignment for $15.50 on account of the policy to be issued; the order being addressed to the Chicago & Northwestern Railway Company, and reading in part:

" For value received, I hereby assign to the Standard Accident Insurance Company, of Detroit, Michigan, the amount of money herein stated, same to be deducted from my wages earned during the several months respectively specified, and paid to said Standard Accident Insurance Company, or its duly authorized agent, who presents this order for collection: $3.90 from wages earned in month of July, 1910; $3.90 from wages earned in month of Aug., 1910; $3.85 from wages earned in month of Sept., 1910; $3.85 from wages earned in month of Oct., 1910. These payments cover the premiums on a policy issued to me by

said Standard Accident Insurance Company, bearing even number and date herewith; the first payment applying to the first insurance period of two months from date hereof; the second payment to the second insurance period of two months more; the third payment to the third insurance period of three months more; and the fourth payment to the fourth insurance period of five months more."

Notice of the accident and of the death of the insured were sent to defendant, and it in reply wrote the following letter:

"We have before us your favor of the 20th advising us that your son left the employ of the Chicago & Northwestern Railroad and entered the employ of the Oliver Mining Company on or about June 1st. The policy which he had with our company was to be dated June 29, 1910, the premium to be paid by assignment of wages on the Chicago & Northwestern Railroad, deductions to be made from wages earned in the months of July, August, September, and October. This policy provides that if the insured shall have left the employment of railway company upon which the order for the payment of premium is given without having earned sufficient in the first month from which the deduction is to be made to pay the premium, or if he shall have collected or disposed of the wages so earned, then the policy is to be void from its date, and no claim entertained for an injury sustained.

"It appears your son left the employment of the Chicago & Northwestern Railroad before the beginning of the month of July, and before our policy took effect, and according to the terms of the contract, therefore, the policy would not be in force and we regret to be obliged to decline to entertain any claim."

The policy recites:

"The Standard Accident Insurance Company, of Detroit, Michigan, incorporated 1884, in consideration of the warranties made in the application for this policy, and of order or an assignment of wages for the moneys therein specified (copy of which application and order is endorsed hereon, and made a part hereof), hereby insures Walfred Lilja (hereinafter called the insured), by occupation, machinist helper, under classification, extra medium, for

the period or periods hereinafter specified beginning at 12 o'clock noon standard time of the day this policy is dated, against loss of time resulting from bodily injuries caused solely during the term of this insurance by external, violent and accidental means which shall, independently of all other causes, immediately, continuously and wholly disable and prevent the insured from engaging in any work or occupation for wages subject to conditions before and hereinafter specified, will pay to the insured or to his beneficiary, Alfred Lilja his father, or in event of his prior death to the executors, administrators or assigns of the insured as follows:"

It contains the following:

"This policy is issued to and accepted by the insured subject to the following provisions: 1. The payments specified in the order or assignment of wages given for this policy are premiums for separate and consecutive periods of two, two, three and five months and each shall apply only to its corresponding insurance period. No claim for injuries sustained during any period for which its respective premium has not been actually paid in full shall be valid under this policy, except in case of just claim for injuries sustained before the end of the month from the wages of which first premium is to be deducted, as provided in said order, but no claim shall be valid in any such case if the insured shall have left the employment of the employer named in the order without having earned in the month designated therein, sufficient wages to pay said first premium, nor if he shall have collected or disposed of the wages earned in said month, so that there shall not remain sufficient wages for the payment of said premium. In making settlement of claims for injuries sustained as aforesaid, the amount due the insured shall be credited on his order as far as it will apply to the full payment of one or more of the separate payments called for by said order, and the balance, if any, shall be paid to the insured. In making settlement of any claim for injuries received during any insurance period, for which the premium has been paid, the amount of unpaid premiums for later periods will be deducted from the amount found due.

"Failure to deduct any of the premium payments called for by said order, from any cause, is at the risk of the insured, and if any premium payment be not deducted as

called for by said order, the insurance hereunder shall cease at the termination of the last insurance period for which payments have been actually deducted from the wages of the insured, except in case of failure to deduct the first premium, in which event the insurance shall cease at the termination of the month from the wages of which the first deduction should have been made as called for by said order."

In the order or assignment, the corresponding clause is:

" I hereby agree that failure to deduct any of the above premium payments from any cause is at my risk, and if any premium payments be not deducted as above provided for all my rights and the rights of my beneficiary under said policy shall be void at the termination of the last insurance period for which payment has been actually deducted from my wages, except in case of failure to deduct the first payment, in which event the insurance shall cease at the termination of the month from the wages of which the first deduction should have been made. I hereby waive for myself and my beneficiary under said policy notice of nonpayment of any premium and agree that no claim will be made for injuries sustained, nor for sickness commencing, during any period for which its respective premium has not been actually paid in full, except that in case of a just claim for injuries sustained or sickness commencing before the end of the month from the wages of which the first premium is to be deducted. If I have left the employment of the employer above named without having earned in the month specified sufficient wages to pay said first premium and have collected or disposed of wages earned in said month, so as not .to leave enough to pay said first premium, then this policy shall be void from its date. The amount due me upon said claim shall be credited thereon, so far as it will apply to the full amount of one or more of the separate payments indicated herein, and in case of just claim for injuries sustained or sickness commencing during any insurance period for which the premium has been paid, the amount of unpaid premiums for later insurance periods will be deducted from the amount due me. I hereby agree that I will not revoke, cancel or annul this order or assignment by notice to said railway company or otherwise."

In the application are the following clauses:

"I hereby apply for a policy, to be based upon an order or assignment for moneys therein specified, and upon the following statements of facts.  *  *  *

"I hereby agree that the policy applied for shall constitute one insurance contract covering four separate periods of insurance, each period to stand by itself, and that the policy shall remain in force after the first insurance period, only as continued by actual payments of premium for the consecutive periods following.  I agree that failure to deduct any of the premium payments as provided in the order above referred to, from any cause, is at my risk, and if any premium payment be not deducted as called for by the order, all my rights and the rights of my beneficiary, under the policy, shall be void at the termination of the last insurance period for which payment has been actually deducted from my wages, except in case of failure to deduct the first premium, in which event the insurance shall cease at the termination of the month from the wages of which the first deduction should have been made, as called for by said order.  I hereby waive for myself and my beneficiary notice of nonpayment of any premium, and agree that no claim will be made for injuries sustained, or for sickness commencing during any period for which its respective premium has not been actually paid in full, except, that in case of a just claim for injuries sustained, or for sickness commencing before the end of the month from the wages of which the first premium is to be deducted as provided in the order, the amount due shall be credited on the order so far as it will apply to the full payment of one or more of the separate payments called for by said order, and in case of just claim for injuries sustained or sickness commencing during any insurance period for which the premium has been paid the amount of unpaid premiums for later insurance periods will be deducted from the amount found due."

Defendant moved for a directed verdict for the following and other reasons:

"That the insured having left the employ of the Chicago & Northwestern Railway Company before the date of the policy of insurance counted on in the declaration, the order or assignment, which was the consideration for the policy, failed, and the contract of insurance with it. That, the insured having left the employment of the Chicago & Northwestern Railway Company without hav-

ing earned in the month of July, 1910, sufficient wages to pay the first premium, the contract of insurance as a result ceased to be in force by its terms at its date."

The court directed a verdict for the defendant for the second reason above stated. The brief of appellant states the contention as follows:

"There is only one question involved in this case, and that is whether or not the court erred in directing a verdict in favor of the defendant and against the plaintiff, and this includes the questions, Did the court properly construe the insurance contract: (*a*) As composed of the application and order or assignment and their acceptance? (*b*) As composed of the application, order, or assignment and policy together? And (*c*) if a forfeiture could be claimed under the terms and provisions of the contract, was such forfeiture waived by the failure of defendant to reject the application or its issuance of the policy, or both?"

It does not appear that the defendant had any notice of the change of the employment of the applicant, or of the accident, until proofs of loss were submitted.

OSTRANDER, J. (*after stating the facts*). Whether defendant is liable depends upon the contract. It is a contract for indemnity, and its terms and provisions, if uncertain in meaning or contradictory of each other, must be given a meaning and construction most favorable to the insured, and to the plaintiff.

The fact upon which nonliability is rested is that the insured did not work for the Chicago & Northwestern Railway Company upon or after the date of the policy. The provision of the policy relied upon is:

"No claim for injuries sustained during any period for which its respective premium has not been actually paid in full shall be valid under this policy, except in case of just claim for injuries sustained before the end of the month from the wages of which first premium is to be deducted, as provided in said order, but no claim shall be valid in any such case if the insured shall have left the employment of the employer named in the order

without having earned in the month designated therein, sufficient wages to pay said first premium, nor if he shall have collected or disposed of the wages earned in said month, so that there shall not remain sufficient wages for the payment of said premium."

The policy, in terms and generally, provides certain indemnity for a period beginning at 12 o'clock noon standard time June 29, 1910. It is issued without payment of the first premium and upon the express agreement that the premium for the months of July and August may be paid out of wages earned during July. If nothing happens to the insured during the month, and if the premium is for any reason not deducted from his wages, "the insurance shall cease at the termination of the month." These are some of the provisions of the policy which support the conclusion that it was intended that the policy should be in force and effect on June 29th and each day thereafter until the end of July, and thereafter in force if the first premium installment should be paid out of wages earned by the insured during July and deducted from his pay for that month; that credit was to be extended. And there is nothing in the policy to indicate that defendant would not have accepted, at any time, cash for the unpaid premium, whether the insured earned the money at one place or another, or paid it out of his savings. There is no direct prohibition of change of employers. If, however, we apply the language first above quoted according to the meaning given it by the defendant, the policy contract is this: There is no indemnity if the insured leaves the specified employment before he earns $3.90 in the month of July. There is no indemnity if the insured remains in the specified employment during July until he earns $3.90 or more, if before he is injured he disposes of all his wages. On the other hand, if the insured earns $3.90, leaves it with the designated employer to pay the order he has given, quits the employment, and is injured, the policy is in force; or, if he remains in the designated employment and is killed, or otherwise injured, having

$3.90 in wages due him, the policy is in force. In short, no credit whatever is extended. No indemnity is promised to one who is killed on or after June 29, 1910, who has not earned, in July, the amount of the first premium, which amount is uncollected and undisposed of and due from the specified employer when the injury occurs.

The application contains no clause or provision with respect to change of employment, or any intimation that failure to earn, in a specified employment, in the month of July, sufficient wages to pay the first premium will avoid the policy applied for. On the contrary, the effect of the provision is that credit for a month is given for the premium exacted for the first insurance period, and, if an injury occurs during the month, or a sickness commences during the month, the premium for that and for succeeding periods is to be deducted from the amount due the beneficiary under the policy. The applicant does not agree in the application, as he does in the order or assignment of wages, that neither he nor his beneficiary will present a claim for injuries arising during the first month if he has left the employment designated in the order or assignment of wages, and does not agree that, if he shall not have earned in a specified employment a sum equal to the first premium, or, if he has disposed of wages earned, neither he nor his beneficiary will present a claim for injuries received during the month. But the application refers to the order, and the policy is in terms issued in consideration of both. No doubt can exist with respect to the details of the transaction. The instruments do not contradict each other. Quite the contrary. It cannot be said that the policy contains provisions not included in the application. Therefore we cannot, as we are asked to do, apply the rule here which was applied in *Dailey* v. *Accident Ass'n*, 102 Mich. 289, 299 (57 N. W. 184, 26 L. R. A. 171), and in *Robinson* v. *Benevolent Society*, 132 Mich. 695, 700 (94 N. W. 211, 102 Am. St. Rep. 436).

I also think there is no ambiguity in the language of that provision of the policy relied upon by defendant, and

have already stated what appears to be to me the clear effect of the provision.   No question of waiver appears to me to be involved.   The doubt I have had concerning the proper disposition of the case arose from the fact that an insurance period is made to begin June 29th, and apparently a premium is exacted for a period beginning on that day when, according to the other provisions of the policy, no risk was or could be assumed by defendant until some time in July.   If a liability or risk beginning June 29th at noon was charged for and was assumed, what was the nature and extent of it?   If the insured had returned to work for the Chicago & Northwestern Railway Company during the month of July, and, having a proper credit for wages earned, had been killed, would defendant in such case be liable?   These questions are not presented by counsel except as the word forfeited is applied and the idea of a forfeiture is made use of in argument.   They have occurred to me in considering whether the particular policy was ever in force.   I am convinced that, however they may be answered, plaintiff's intestate did not perform, on his part, the conditions necessary to enable himself or plaintiff to demand the contract indemnity.

No error was committed in directing a verdict for defendant, and the judgment below is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, and STONE, JJ., concurred.   BLAIR and BIRD, JJ., did not sit.