650 F.2d 112
 Jo Ann KISSEL, Individually and as Administratrix of the
Estate of Jarrie E. Kissel, Deceased, Plaintiff-Appellant,
v.
BANKERS LIFE AND CASUALTY COMPANY, a foreign corporation,
Defendant-Appellee.
 No. 79-1544.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 2, 1981.
Decided June 1, 1981.
 
 Richard A. Lenter, Katz, Victor & Yolles, Southfield, Mich., for plaintiff-appellant.
 Arthur M. Hoffeins, Detroit, Mich., for defendant-appellee.
 Before EDWARDS, Chief Judge, BROWN, Circuit Judge and BATTISTI,* District Judge.
 PER CURIAM.
 
 
 1
 Appellant Kissel, the wife of a now deceased executive of the Uniroyal Corporation, appeals from the summary judgment in favor of appellee Bankers Life and Casualty Company entered by District Judge Ralph Freeman in the United States District Court for the Eastern District of Michigan. The essential facts which produced this litigation may be recited as follows.
 
 
 2
 Plaintiff's decedent, after returning from an out of town business trip, went directly to his office and transacted some business. Thereafter he and one of the men with whom he had transacted business met at Eddie Thomas' bar near the Uniroyal offices on East Jefferson in Detroit where they were joined by several other Uniroyal employees. The record consisting of depositions of the parties showed without dispute that at the bar, business of the employer was discussed although there is other testimony to the effect that the gathering was also a social occasion. After four and one-half hours at Eddie Thomas' bar, decedent was killed in an automobile accident while driving toward his suburban home.
 
 
 3
 Critical to disposition on cross motions for summary judgment are the following provisions in the insurance company's policies issued by appellee Bankers Life on all salaried employees of the Uniroyal Corporation:
 
 
 4
 " 'Injury' wherever used in this policy with respect to Coverage A means bodily injury causing the loss while this policy is in force directly and independently of all other causes and effect solely through an accidental bodily injury to the insured Person provided such injury is sustained by the Insured Person while on the business of the Employer.
 
 
 5
 The term 'while on the business of the Employer' as used in this policy with respect to Coverage A means any trip made by the Insured Person upon assignment by or with the consent of the Employer (excluding commutation and vacations) for the purpose of furthering the business of the Employer. Such trip shall be deemed to have commenced when the Insured Person leaves his place of employment or residence whichever last occurs and shall continue until such time as the Insured Person returns to his place of employment or residence whichever first occurs."
 
 
 6
 We believe the key phrase in the policy is: The term "while on the business of the employer as used in this policy with respect to Coverage A means any trip made by the Insured Person upon assignment by or with the consent of the Employer (excluding commutation and vacations) for the purpose of furthering the business of the Employer." Assuming as appellant argues that there was discussion of business at Eddie Thomas' bar, there is neither allegation nor deposition evidence to support the proposition that the visit there was a "trip made by the insured person upon assignment by or with the consent of the employer." For this reason, the judgment of the District Court is affirmed.
 
 
 7
 BATTISTI, District Judge (dissenting).
 
 
 8
 The District Court granted appellee's motion for summary judgment on the basis that Mr. Kissel's work-related[1] meeting at a bar the evening of his death did not involve a "trip" within the meaning of appellee's group accident insurance policy. The court preferred a narrow construction of the term "trip" and concluded "clearly the word trip when used in the policy means something more than a walk or drive across the street to a bar regardless of the purpose for going to the bar."
 
 
 9
 I find the court's narrow construction of the word "trip" to be unpersuasive since the insurance contract is easily susceptible of a more comprehensive interpretation than the court was willing to admit. The term "while on the business of the Employer" which incorporates the word "trip" is not limited as to either duration or distance. More specifically, a reasonable construction of the language does not preclude coverage for accidents which might occur in travel to and from local business meetings. The policy itself provides for "coverage for the Insured person anywhere in the world unless otherwise expressly stated herein." The policy only expressly excludes from coverage commutation and vacation travel. At the very least, doubts or ambiguity concerning coverage for accidents occurring during local business "trips" must be resolved in favor of the appellant:
 
 
 10
 "It is a principle of law too well established in this jurisdiction and others to need discussion or citation of authorities, that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured; that technical construction of policies of insurance are not favored; and that exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer."
 
 
 11
 Pietrantonio v. Travelers Ins. Co., 282 Mich. 111, 116, 275 N.W. 786 (1937); See also Gorham v. Peerless Life Ins. Co., 368 Mich. 335, 343-344, 118 N.W.2d 306 (1962).
 
 
 12
 This Court now affirms the judgment of the District Court because it believes that there is neither "allegation nor deposition evidence" that the insured's meeting at the bar the night he died was upon assignment by or with the consent of his employer as required under the insurance policy. The District Court made no factual findings on this issue and assumed Mr. Kissel was at the bar on assignment by or with the consent of his employer. The parties neither briefed nor argued the point.
 
 
 13
 As this Court has often indicated, on a motion for summary judgment the movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all the inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. den., 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); U. S. v. Articles of Device, etc., 527 F.2d 1008, 1011 (6th Cir. 1976); Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1967).
 
 
 14
 The relevant language of the policy, "any trip made by the insured Person upon assignment by or with the consent of the Employer for the purpose of furthering the business of the Employer," is obviously intended to preclude coverage for injuries sustained by the insured while on unauthorized travel unrelated to the employer's business. At the time of his death, Mr. Kissel was vice-president of the Allied Brands Division of the Uniroyal Tire Company. This official position would seem to have vested Mr. Kissell with the authority to conduct business discussions with fellow employees at local restaurants and bars. On the evening of his accident, Mr. Kissel in fact engaged in a conversation at the bar with Jilda Waldroop, who was also employed in the Allied Brands Division, concerning the relocation of the customer service department of the division to Detroit, Michigan. (Deposition of Jilda Waldroop at 15-16) The fact that Mr. Kissel chose a neighborhood bar for these discussions did not necessarily transmute his travel to and from the bar into an unauthorized business trip. I believe the record contains sufficient facts, namely Mr. Kissel's official position and evidence of the business discussions at the bar the evening of his death, from which an inference can be clearly drawn that Mr. Kissel's travel and activities were "upon assignment by or with the consent of the Employer for the purpose of furthering the business of the Employer."
 
 
 15
 For these reasons, I must dissent. I believe appellee's motion for summary judgment should have been denied.
 
 
 
 *
 Honorable Frank J. Battisti, Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The District Court assumed that business was discussed at the bar. Deposition testimony supports this assumption. See, e. g. Deposition of Berry Holmes at 22-23 and Deposition of Jilda Waldroop at 15-16 (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at p. 3)